In the United States District Court
for the Eastern District of Michigan

| | |
|---|---|
| Curtis Remaley, | |
| *On behalf of himself and others similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Hungry Howie Pizza & Subs, Inc. and HH Pizza Management, Inc.; | Jury Demand Endorsed Hereon |
| Defendants. | |

Collective Action Complaint

1.      Curtis Remaley, on behalf of himself and all similarly-situated individuals, brings this action against Defendants Hungry Howie Pizza & Subs, Inc. ("Hungry Howie's Pizza") and HH Pizza Management, LLC ("HH Pizza Management"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum and overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

2.      Hungry Howie's Pizza is the nation's 11th largest pizza company with over 550 locations                 throughout                 the                 country.                 (*See*

https://web.archive.org/web/20130402154752/http://www.pmq.com/April-2013/James-Jim-Hearn-Founder-of-Hungry-Howies-Pizza-Subs-dies/ (last visited Aug. 30, 2020).

3.      Plaintiff worked as a delivery driver for the Hungry Howie's Pizza store located at 2209 Citrus Blvd., Leesburg, Florida 34748 from approximately October 1, 2020 until approximately April 30, 2022.

4.      Hungry Howie's Pizza and HH Pizza Management jointly employed Plaintiff and similarly-situated delivery drivers at at all times relevant.

5.      Defendants' repeatedly and willfully violated the FLSA by failing to adequately reimburse delivery drivers for their delivery-related expenses, and thereby failing to pay delivery drivers the legally mandated minimum and overtime wage for all hours worked.

6.      All delivery drivers at Defendants' stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

7.      Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

## JURISDICTION AND VENUE

8.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Hungry Howie's Pizza & Subs, Inc. is headquartered at 30300 Stephenson Highway, Suite 200, Madison Heights, Michigan 48071, and a substantial part of the events giving rise to the claims herein occurred in this district.

## PARTIES

10.     Plaintiff Curtis Remaley resides is a Florida resident and worked for Defendants' Hungry Howie's Pizza store located at 2209 Citrus Blvd., Leesburg, Florida 34748 from approximately October 1, 2020 through approximately April 30, 2022.

11.     Plaintiff was an "employee" of both Defendants as defined by the FLSA.

12.     Plaintiff has given written consent to join this action, a copy of which is attached to this Complaint as "**Exhibit A**".

13.     Hungry Howie's Pizza is a privately held multi-unit enterprise with its principal place of business in Michigan.

14.     Hungry Howie's Pizza is an "employer" of Plaintiff and similarly situated delivery drivers as that term is defined by the FLSA.

15.     Upon information and belief, Hungry Howie's Pizza applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, and reimbursement of automobile expenses.

16.     At all relevant times, Hungry Howie's Pizza maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, and other practices.

17.     At all relevant times, Hungry Howie's Pizza has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

18.     Hungry Howie's Pizza's gross revenue exceeds $500,000 per year.

3

19.     HH Pizza Management is a privately held multi-unit enterprise which owns and operates multiple Hungry Howie's Pizza locations, including the location where Plaintiff worked.

20.     HH Pizza Management is an "employer" of Plaintiff and similarly situated delivery drivers as that term is defined by the FLSA.

21.     Upon information and belief, HH Pizza Management applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, and reimbursement of automobile expenses.

22.     At all relevant times, HH Pizza Management maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, and other practices.

23.     At all relevant times, HH Pizza Management has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

24.     HH Pizza Management's gross revenue exceeds $500,000 per year.

**LEGAL STANDARDS APPLICABLE TO DEFENDANTS'
EXPENSE REIMBURSEMENT VIOLATIONS**

25.     The FLSA prohibits any "kickback" of job-related expenses which would cut into the minimum wage or overtime otherwise required to be paid under the Act. Specifically, 29 C.F.R. § 531.35 provides:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that

4

the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the **minimum or overtime wages** required to be paid him under the Act. (emphasis added).

26.     Pizza delivery drivers' vehicle expenses are "tools of the trade." "In the pizza delivery context, the cost associated with delivering food for an employer is a 'kickback' to the employer that must be fully reimbursed, lest a minimum wage violation be triggered." *Hatmaker v. PJ Ohio*, LLC, No. 3:17-cv-146, 2019 WL 5725043, at *3 (S.D. Ohio Nov. 5, 2019); *see also, e.g.*, *Benton v. Deli Management, Inc*., 396 F.Supp.3d 1261, 1269-74 (N.D. Ga. Aug. 8, 2019) ("[Employer's] need for a vehicle is directly incidental to its business."); *Yu G. Ke v. Saigon Grill, Inc*., 595 F.Supp.2d 240, 258 (S.D.N.Y. Oct. 21, 2008) ("there is substantial legal authority for the proposition that mechanisms for transportation- typically motor vehicles-can be tools of the trade."); *Perrin v. Papa John's Int'l, Inc*., 114 F.Supp.3d 707, 729-30 (E.D. Mo. July 8, 2015) (denying summary judgment that fixed costs could be excluded from "tools of the trade").

27.     The relevant regulation governing such "kickbacks" does not define a methodology for calculating mileage rates or provide any other guidance as to how to determine or put a value on the expenses related to operating an automobile for work. *See* 29 C.F.R. § 531.35.

28.     In light of this ambiguity, Courts have adopted the methodology detailed in the Department of Labor's Field Operations Handbook. *See Hatmaker,* 2019 WL 5725043, at *6 (granting delivery drivers' motion for summary judgment); *see also Brandenburg v. Cousin Vinny's Pizza*, LLC, No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018) (granting Rule 23 class certification); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376, *1 (Nov. 25, 2019) (granting final approval of Rule 23 settlement and adopting DOL Handbook standard).

37.     Specifically, the DOL Handbook's rule is:

**30c15 Car expenses: employee's use of personal car on employer's business.** In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.

(a) As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a prorate basis.

38.   "In the pizza delivery driver context, … determining and maintaining records of each employee's actual expenses is a cumbersome task for the employer." *Hatmaker*, 2019 WL 5725043, *3. As a result, the Handbook standard "giv[es] employers a choice in order to ease their burden: either (1) keep records of delivery drivers' actual expenses and reimburse for them or (2) reimburse drivers at the IRS standard business mileage rate." *Id.*

## LEGAL STANDARDS APPLICABLE TO
## DEFENDANTS' STATUS AS "EMPLOYERS"

39.     Given the FLSA's sweeping definitional language, the Sixth Circuit has recognized that the statute "contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991). In addition, "[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *Dole*, 942 F.2d at 965 (internal quotation marks and citation omitted). More specifically, "[i]n deciding whether a party is an employer, 'economic reality' controls rather than common law concepts of

agency." 942 F.2d at 965 (citation omitted). Finally, "[w]hether a party is an employer within the meaning of the FLSA is a legal determination." 942 F.2d at 965.

40.     "Under the 'single employer' or 'integrated enterprise' doctrine, two companies may be considered so interrelated that they constitute a single employer subject to liability under" federal law. *Swallows v. Barnes & Noble Book Stores, Inc*., 128 F.3d 990, 993 (6th Cir. 1997). "In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Id.* at 993-94; *see also Benion v. LeCom, Inc*., 336 F. Supp.3d 829, 846-47 (E.D. Mich. 2018); *Sutton v. Community Health Systems, Inc.*, 2017 U.S. Dist. LEXIS 133712, 2017 WL 3611757, at *3-*4 (W.D. Tenn. Aug. 22, 2017); *Lankford v. CWL Investments, LLC*, 2014 U.S. Dist. LEXIS 111929, 2014 WL 3956184, at *10 (E.D. Mich. Aug. 13, 2014); *Sierra v. Casa Fiesta, LLC,* 2014 U.S. Dist. LEXIS 200783, 2014 WL 12586059, at *3 (E.D. Mich. June 13, 2014); *Takacs v. Hahn Automotive Corp*., 1999 U.S. Dist. LEXIS 21691, 1999 WL 33117265, at *4-*5 (S.D. Ohio Jan. 4, 1999).

41.     In addition to the "single employer" or "integrated enterprise" doctrine, two or more companies may be liable under the FLSA as "joint employers." "[T]he FLSA does not distinguish between employers and joint employers. Any factor that is relevant to whether an entity is an employer is also relevant to whether the entity is a joint employer." *New York v. Scalia*, 490 F Supp. 3d. 748, 790 (S.D.N.Y. Sept. 8, 2020). Historically, 29 C.F.R. § 791.2 has explained that:

> (a) A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938 . . . . [I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from

employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act . . . with respect to the entire employment for the particular workweek. . . .

(b) Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer. 29 C.F.R. § 791.2 (effective though March 15, 2020) (presently repealed and reserved).

## **FACTS**

### **COLLECTIVE-WIDE FACTUAL ALLEGATIONS**

42.     At all relevant times, Defendants have failed to pay Plaintiff and similarly situated delivery drivers the legally required minimum wage and overtime wages because they failed to adequately reimburse them for their automobile expenses or other job-related expenses.

43.     Plaintiff and similarly situated delivery drivers typically average approximately ten miles per round-trip delivery.

44.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

      a.     2019: 58 cents/mile
      b.     2020: 57.5 cents/mile
      c.     2021: 56 cents/mile
      d.     2022: 58.5 cents/mile

8

45.     Prices for gasoline in 2022 have increased by more than 50% compared to what they were a calendar year ago in 2021. https://www.cnbc.com/2022/05/31/gas-prices-and-inflation-overtake-covid-as-top-travel-worry-.html (last visited Aug. 31, 2022)

46.     As a result of the automobile and other job-related expenses and deductions incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wage and overtime wages guaranteed to them by the FLSA.

47.     At all relevant times, Defendants apply the same pay policies, practices, and procedures to all delivery drivers at all Hungry Howie's Pizza locations.

48.     All of Defendants' delivery drivers had similar experiences to those of Plaintiff. They were were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; and completed deliveries of similar distances and at similar frequencies.

49.     For example, all delivery drivers at all Hungry Howie's Pizza stores nationwide are required to provide their own vehicle to deliver Defendants' pizzas and related food products and beverages.

50.     Defendants have never kept track of the actual vehicle related expenses incurred by delivery drivers at any of Hungry Howie's Pizza stores nationwide.

51.     Defendants suffer or permit their delivery drivers to receive a flat rate per delivery reimbursement which is often as little as $1.00 per delivery.

52.     Regardless of the precise amount of the per-delivery reimbursement at any given point in time, the Defendants' reimbursement policies have resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout, causing systematic violations of the federal minimum wage and overtime wage requirements.

53.    Defendants are aware of, or should have been aware of, the minimum wage and overtime requirements of the FLSA.

54.    By failing to adequately reimburse delivery drivers for job-related expenses as described herein, Defendants have willfully violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206.

55.    By failing to adequately reimburse delivery drivers for job-related expenses as described herein, in instances in which a driver worked in excess of forty hours in any given workweek, Defendants violated the overtime provisions of the FLSA, 29 U.S.C § 207(a).

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

56.    Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

57.    Defendants required Plaintiff to maintain and pay for an operable, safe, and legally compliant automobile to use in delivering pizza.

58.    Plaintiff was required to purchase gasoline, oil and other fluids, vehicle parts, auto repair and maintenance parts and services, and auto insurance for the benefit of Defendants.

59.    Plaintiff's car depreciated in value as a result of the work he completed for Defendants.

60.    Defendants never attempted to track how much money Plaintiff was paying out of pocket in order to make deliveries on their behalf.

61.    Defendants never required, requested or permitted Plaintiff to record or report the expenditures he made for his car, gasoline, and/or for other job-related expenses.

62.     At all relevant times in her work for Defendants, Plaintiff received a flat delivery reimbursement amount of approximately $1.50 for each delivery he completed. This reimbursement rate was the same no matter how many miles she drove.

63.     Plaintiff drove approximately 10 miles per delivery during his employment with Defendants.

64.     Thus, Defendants' average effective reimbursement rate for Plaintiff was approximately 15 cents per mile ($1.50 per delivery / 10 average miles per delivery).

65.     In 2020, the IRS mileage reimbursement rate was 57.5 cents per mile. As such, in 2020, Defendants under reimbursed Plaintiff approximately 42.5 cents per mile and $4.25 per delivery.

66.     In 2021, the IRS mileage reimbursement rate was 56 cents per mile. As such, in 2021, Defendants under reimbursed Plaintiff approximately 41 cents per mile and $4.10 per delivery.

67.     For the first half of 2022, the IRS mileage reimbursement rate was 58.5 cents per mile. As such, in 2022, Defendants under reimbursed Plaintiff approximately 43.5 cents per mile and $4.35 cents per mile.

68.     At all relevant times during his employment, Defendants paid Plaintiff at or below the federal minimum wage of $7.25 per hour.

### FACTS PERTAINING TO DEFENDANTS' STATUS AS "EMPLOYERS"

69.     Defendants operate a largescale franchise business model.

70.     In a similar action involving Domino's pizza, a district court within the Sixth Circuit recently held that it was plausible that Domino's Pizza, Inc was liable for FLSA violations as a joint employer despite the existence of a franchisee entity having ownership of the particular

store at which the named plaintiff worked. *See Clark v. Pizza Baker*, Case No. 2:18-cv-00157, 2019 U.S. Dist. LEXIS 161623 *25-31 (S.D. Oh. Sept. 23, 2019).

71. Upon information and belief, Hungry Howie's Pizza has a franchisee partnership at each and every Hungry Howie's location within the enterprise.

72. Hungry Howie's Pizza has a franchisee partnership with HH Pizza Management for the primary purpose of operating several Hungry Howie's Pizza locations.

73. Defendants share a common goal of maximizing revenue and profitability, and reducing operating costs at all of the Hungry Howie's Pizza locations which they jointly operate.

74. Upon information and belief, enterprise strategic decision making occurs at the top-corporate level by Hungry Howie's Pizza and such decisions are cascaded down to franchisees such as HH Pizza Management.

75. Hungry Howie's Pizza characterizes delivery as one of its "core competencies" and assures franchisees such as HH Pizza Management that the enterprise is "well positioned to take advantage of the seismic shift in demand for delivered food" which Hungry Howie's Pizza considers part of its "strong business model." *See* https://franchising.hungryhowies.com/ (last visited Aug. 30, 2022).

76. Hungry Howie's Pizza exercises substantial control over Plaintiff and similarly situated delivery drivers, both directly and indirectly.

77. Hungry Howie's Pizza has the power to curtail the unlawful policies, patterns and/or practices alleged herein, but has refrained from doing so in order to continue to reap the profits from the franchise relationship.

78. Hungry Howie's Pizza has a clear and direct interest in franchise stores minimizing labor costs to increase profitability—even if it means minimizing labor costs below state and

federal minimums—particularly if they are permitted to collect profits while also being insulated from legal liability.

79.    For example, all Hungry Howie's Pizza franchisees, including HH Pizza Management are required to pay 5.5% of all sales to Hungry Howie's Pizza as a "royalty." *See* https://franchising.hungryhowies.com/faq (last visited Aug. 31, 2022).

80.    Additionally, Hungry Howie's Pizza requires all of its franchisees, including HH Pizza Management, to pay 7% of all sales to Hungry Howie's Pizza to fund national and local advertising campaigns. *See id.*

81.    Franchisees, including HH Pizza Management, must contribute an additional 1% of all sales to Hungry Howie's Pizza for "community advertising" which is used to funds the enterprises "Love, Hope & Pizza" public relations initiative. *Id. see also* https://www.hungryhowies.com/about/community-involvement (last visited Aug. 31, 2022).

82.    In other words, Hungry Howie's Pizza collects no less than 13.5% of all gross revenue generated at all of their franchise locations, including HH Pizza Management.

83.    Additionally, Hungry Howie's Pizza provides all the food and beverage inventory to its franchisees, including HH Pizza Management, through one vertically integrated enterprise-wide supply chain. *See* https://franchising.hungryhowies.com/faq (last visited Aug. 31, 2022). This supply chain quantity-based discounts and economies of scale which benefit both Hungry Howie's Pizza and franchisees such as HH Pizza Management.

84.    Hungry Howie's Pizza requires all its franchisees, including HH Pizza Management, in a 4-week long training program at Hungry Howie's corporate headquarters in Michigan. Hungry Howie's Pizza also spends no less than 2-weeks in each of its franchise locations, including those operated by HH Pizza Management, with corporate consultants to

provider further training. Hungry Howie's Pizza provides additional ongoing training to its franchisees, including HH Pizza Management. *See* https://franchising.hungryhowies.com/faq (last visited Aug. 31, 2022).

85.     Additionally, Hungry Howie's Pizza provides corporate created training programs for all of the employees at each and every franchise location, including those operated by HH Pizza Management. *See* https://franchising.hungryhowies.com/ (last visited Aug. 31, 2022).

86.     Upon information and belief, franchisees, including HH Pizza Management, are subject to Hungry Howie's Pizza's corporate compliance requirements and control, and are subject to discipline, including the termination of the right to operate any given restaurant.

87.     Hungry Howie's Pizza requires all of its franchisees, including HH Pizza Management, to utilize corporate created, enterprise-wide technology platforms. *See id.* Defendants use these platforms, such as its enterprise-wide ordering platform, to increase sales.

88.     Defendants further use these platforms to have access to real time and remote monitoring and control of operations at any given Hungry Howie's Pizza location at given time.

89.     In fact, through their "HowieTrack" order tracking system, Defendants track every delivery which Plaintiff and similarly situated delivery drivers have made and will make. *See* https://hungryhowies.hungerrush.com/OrderTracker (last visited Aug. 31, 2022).

90.     Upon further information and belief, these enterprise-wide platforms allow Hungry Howie's Pizza to control the actual labor needs of franchise stores, labor budget and allocation for franchise stores, employees' job duties at franchise stores, behavioral policies and procedures at franchise stores, employee training at franchise stores, supply of food, products, and training at franchise stores, advertising and marketing at franchise stores, and the overall operational system and budget of franchise stores, including the HH Pizza Management restaurants.

91.     Upon information and belief, franchises such as HH Pizza Management are contractually obligated to provide Hungry Howie's Pizza full access to their business information; therefore Hungry Howie's Pizza has constant, real-time access to all information in any franchise store nationwide, and reviews certain aspects of that information from all its stores daily.

92.     Franchisees such as HH Pizza Management are required to adhere to Hungry Howie's conditions regarding property leases and the layout and aesthetic of store itself.

93.     Hungry Howie's Pizza must approve of all franchisee leases.  Leases have to conform with Hungry Howie's Pizza's requirements for its corporate owned locations.

94.     By monopolizing the supply chain, Hungry Howie's Pizza allows franchisees even less flexibility in allocating their budget.

95.     Hungry Howie's Pizza sets employee standards and enforces those standards through regular communications with franchisees and in-person inspections throughout the year.

96.     Hungry Howie's Pizza goes beyond the supervision of food quality, instead engaging in co-supervision or co-management of everyday store operations and employee activities.

97.     By mandating the franchise stores operate on a shoestring budget according to their own detailed policies and guidelines, Hungry Howie's Pizza controls the terms and conditions of Plaintiff's employment and the employment of similarly situated delivery drivers.

98.     Delivery driver job positions for franchise stores are posted on Hungry Howie's Pizza's corporate website.  *See* https://www.hungryhowies.com/job-opportunities (last visited Aug. 31, 2022). The job posting identifies specific job duties and minimum requirements for the job, which are nearly identical across all Hungry Howie's Pizza stores.

99.     The distances travelled by Plaintiff and similarly situated delivery drivers per delivery is directly decreed by Hungry Howie's Pizza.

100.    Hungry Howie's Pizza assigns an exclusive area of primary responsibility to each franchised store.  Said differently, Hungry Howie's Pizza determines the delivery radius for each store.

101.    Hungry Howie's Pizza maintains employment records for franchise stores.  Such information includes, but is not limited to, employees' clock in/out information, first and last names, wage rates, tips reported by drivers, and mileage calculations that could be used to reimburse delivery drivers for delivery expenses.

102.    Hungry Howie's Pizza has been aware and/or should have been aware of the wage and hour violations occurring at each of its franchise locations, including those operated by HH Pizza Management, and Hungry Howie's Pizza has at all times had the authority to stop them from happening.

103.    Both Hungry Howie's Pizza and HH Pizza Management are privately held corporations and Plaintiff has very limited access to information relevant to Hungry Howie's Pizza and HH Pizza Management's joint-employer relationship. However, more relevant factual information will be discoverable in this matter.

## COLLECTIVE ACTION ALLEGATIONS

104.    Plaintiff brings the First Count and Second Count of this Complaint on behalf of the following individuals:

> All current and former delivery drivers employed at any Hungry Howie's Pizza location nationwide and was not paid the IRS standard mileage rate for vehicle-related expense reimbursement at any point during the three years prior to the filing of this Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

16

105.    At all relevant times, Plaintiff and the Collective Members have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the Collective Members minimum wage and overtime for all hours worked.  Plaintiff's claims are essentially the same as those of the Collective Members.

106.    Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiff and the Collective Members.

107.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

108.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

109.    Defendants are aware or should have been aware that federal law prohibited them from taking "kickbacks" from the wages of delivery drivers.

110.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

111.    This action is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

112.    The Collective Members are readily identifiable and ascertainable.

## CAUSES OF ACTION

### Count One
### Fair Labor Standards Act – Minimum Wage Violation
### On behalf of Plaintiff and the Collective Members

113.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

114.    Plaintiff and the Collective Members are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

115.    The minimum wage requirements of the FLSA will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the **minimum** or overtime **wages**. 29 C.F.R. § 531.35 (emphasis added).

116.    It is well established that, in the pizza delivery context, employers have two options to comply with the minimum wage directives of the FLSA: either (1) keep records of delivery drivers' actual expenses and reimburse for them or (2) reimburse drivers at the IRS standard business mileage rate." *Hatmaker*, 2019 WL 5725043, *3 citing DOL Field Operations Handbook 30c15.

117.    At all relevant times, Plaintiff and the Collective Members were required to provide their own vehicle to deliver Defendants' pizzas and related food products and beverages.

118.    At all relevant times, Defendants never kept track of the actual vehicle related expenses incurred by Plaintiff and the Collective Members.

119.    At all relevant times, Defendants suffered or permitted Plaintiff and the Collective Members to receive a flat rate per delivery reimbursement which is often as little as $1.50 per delivery.

120.    As a result of the forgoing actions, Defendants have violated the minimum wage provisions of the FLSA, 29 U.S.C § 206.

121.    Defendants are aware, or should have been aware, of the minimum wage requirements of the FLSA.

122.    As such, Defendants have willfully violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206.

123.    Plaintiff and the Collective Members have been damaged by Defendants' willful failure to pay minimum wage as required by law.

124.    As a result of Defendants' violations of the FLSA, Plaintiff and the Collective Members, are entitled to all unpaid minimum wages to be proven at trial, an additional amount equal to all such unpaid minimum wages as liquidated damages, reasonable attorneys' fees, and costs.

**Count 2**
**Fair Labor Standards Act – Overtime Violation**
**On behalf of Plaintiff and the Collective Members**

125.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

126.    Plaintiff and the Collective Members are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

127.    Plaintiff and other Collective Members worked in excess of forty hours in a given workweek thereby requiring Defendants to pay Plaintiff and other Collective Members one-and-one-half times their regular rate of pay for all such hours worked.

128.    The overtime wage requirements of the FLSA will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the

employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or **overtime wages**. 29 C.F.R. § 531.35 (emphasis added).

129.    It is well established that, in the pizza delivery context, employers have two options to comply with the overtime wage directives of the FLSA: either (1) keep records of delivery drivers' actual expenses and reimburse for them or (2) reimburse drivers at the IRS standard business mileage rate." *Hatmaker*, 2019 WL 5725043, *3 citing DOL Field Operations Handbook 30c15.

130.    At all relevant times, Plaintiff and the Collective Members were required to provide their own vehicle to deliver Defendants' pizzas and related food products and beverages.

131.    At all relevant times, Defendants never kept track of the actual vehicle related expenses incurred by Plaintiff and the Collective Members.

132.    At all relevant times, Defendants suffered or permitted Plaintiff and the Collective Members to receive a flat rate per delivery reimbursement which is often as little as $1.50 per delivery.

133.    At all relevant times, Defendants did so while also suffering or permitting Plaintiff and other Collective Members more than forty hours in a given workweek.

134.    As a result of the forgoing actions, Defendants have violated the overtime wage provisions of the FLSA, 29 U.S.C § 207(a).

135.    Defendants are aware, or should have been aware, of the overtime wage requirements of the FLSA.

136.    As such, Defendants have willfully violated the overtime wage provisions of the FLSA, 29 U.S.C. § 207(a).

137.    Plaintiff and the Collective Members have been damaged by Defendants' willful failure to pay overtime wages as required by law.

138.    As a result of Defendants' violations of the FLSA, Plaintiff and the Collective Members, are entitled to all unpaid overtime wages to be proven at trial, an additional amount equal to all such unpaid overtime wages as liquidated damages, reasonable attorneys' fees, and costs.

**WHEREFORE**, Plaintiff Curtis Remaley prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the Collective Members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum and overtime wages, reimbursement of expenses, unlawful deductions and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.    An award of prejudgment and post-judgment interest.

D.    An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

E.    A service award to Plaintiff in recognition of his efforts on behalf of the Collective.

F.    Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/      *James L. Simon*
James L. Simon
Simon Law Co.
5000 Rockside Road
Liberty Plaza – Suite 520
Independence, Ohio
Phone: (216) 525-8890
Email: james@simonsayspay.com

/s/      *Michael L. Fradin*
Michael L. Fradin
The Law Office of Michael L. Fradin
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Phone: 847-644-3425
Fax: 847-673-1228
Email: mike@fradinlaw.com

*Counsel for Plaintiff and the Putative Collective*

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/      *James L. Simon*